# THE CHOLLAR–POTOSI MINING COMPANY, APPELLANT, *v.* KENNEDY & KEATING, RESPONDENTS.

Section 21 of the Statute of Limitations does not in any way qualify Section 5 of the same Act.

Section 5 prescribes the general rule as to limitations of real actions or actions for the possession of real estate, and Sections 14 and 15 declare the only exceptions to that rule.

Section 16 declares the limitation in personal actions, and Section 21 the exceptions to the general rule.

A has been for five years in constant use of a piece of land as a road. This shows a *prima facie* right to use it as such. B fences up the road, and when sued says: "I appropriated this land seven years since." This is not a good defense, because he does not show he has been in possession within five years.

Road and way are not synonymous terms. Way and right of way are nearly synonymous; but the word road is frequently used to mean the land over which a public or private way is established.

The first appropriator of public land has always been held in the Courts of this State as the owner of the same. The party who appropriates public land for a road is just as much entitled to it as one who appropriates a piece of land for a mill-site or cornfield.

Even if one appropriating public land for a road could not be held as having appropriated land, still a five years' uninterrupted enjoyment of the right of way would establish a prescriptive right to continue to enjoy the same.

A person assuming to have the right of way and continuously exercising that right for a period of five years without consulting the owner of the soil or asking his permission, must be considered as holding adversely.

A party who relies on a prescriptive right of way need not, when he is sued for a disturbance, aver in his complaint *in hæc verba*, that he enjoys the right of way by *prescription*. It will be sufficient for him to aver that he has enjoyed the right of way for a period long enough to have established that right.

APPEAL from the District Court of the First Judicial District, Storey County, Hon. RICHARD RISING presiding.

The facts are fully stated in the opinion.

*C. J. Hillyer*, for Appellant.

The laying out, grading and using the road for five years, made a full and complete possessory title to the land over which the road actually passed, and this possession being open and notorious, was adverse to all the world. (Stat. Lim. Secs. 5 and 10; Ang. on

Lim. Secs. 383–390, and note ; 11 Peters, U. S. 53 ; 5 Ib. 402 ; 6 Pick. 172 ; 4 Wharton, Pa. 259.)

Section 21 does not make any exception applicable to this case. The language of Sec. 21 does not apply to corporations. (*Faulkner* v. *Delaware Co.*, 1 Denio, 441 ; *Olcott* v. *Tioga R. R. Co.*, 26 Barb. 148 ; *Clark* v. *Burk*, 5 Eng. Ark. 516.) We are aware the New York cases cited have been overruled in the Court of Appeals of that State, but we maintain the argument in favor of the views expressed by the Supreme Court as the more satisfactory.

Actions for the recovery of land are not within the policy of the exceptions in Section 21. That section was intended to relieve parties from loss occasioned by their inability effectually to prosecute a suit in the absence of the defendant. If there was no impediment the exceptions do not apply. (See *Sage* v. *Hawley*, 16 Conn. 106 ; 1 Clark, Iowa, 498 ; *Garth* v. *Robards*, 20 Missouri, 525.)

There was during the entire occupancy of the defendant no impediment to an effectual prosecution in this case. First— Although defendant is a California corporation, still it has, and always has had, an officer resident in this State or Territory, on whom a personal service could have been made, which would have been binding on the corporation. Second—Even if personal service could not have been had, still service by publication could have been had, and a judgment on such service would have been just as effectual against the land as upon personal service.

This is different from a judgment in an action for personal property or damages, which without personal service is only conclusive within the jurisdiction where rendered. (Story's Conflict of Laws, Secs. 463–6 ; 1 Breckenridge, 203 ; *Watts* v. *Kinney*, 6 Hill, 82.) Third—An action for the possession may be maintained against the actual occupant. (*Garner* v. *Marshall*, 9 Cal. 268 ; *Shaver* v. *McGraw*, 12 Wend. 558.) The only case we can find where a decision has been made applying the exceptions in the Statute of Limitations to a case where there was in fact no obstruction to the bringing of an action within the time limited by the general provisions of the Statute, is a case in 10 Indiana, 183. There the Court

seems to base its decision on the very explicit language of the law which cannot be evaded. That very explicit language is not to be found in our Statute. There is, therefore, not the same reason here for failing to give the Statute a liberal and fair interpretation according to its evident spirit and interest.

Admitting the ownership of the land to be in defendants, plaintiff has shown a prescriptive right of way.

The laying out, grading, and occupancy of the road for five years, shows a prescriptive right to a private way. (*Miller* v. *Garlock*, 8 Barb. 153; *Garrett* v. *Jackson*, 20 Penn. S. R. 331; *French* v. *Marsten*, 4 Foster [N. H.] 451; *Pierce* v. *Selleck*, 18 Conn. 331; *Hall* v. *McLeod*, 2 Met. Ky. 98; *Curtis* v. *Angier*, 4 Gray, 548; *Hamilton* v. *White*, 4 Barb. 60; *Colvin* v. *Burnett*, 17 Wend. 566; *Shumway* v. *Simmons*, 1 Vt. 53; *Hammond* v. *Zehner*, 23 Barb. 473; *Corning* v. *Gould*, 16 Wend. 531; *Pierce* v. *Cloud*, 42 Penn. S. R. 102; *Steffy* v. *Carpenter*, 37 Ib. 41; *Worrall* v. *Rhodes*, 2 Wharton, 427; *Okeson* v. *Patterson*, 5 Casry, 22; *Hart* v. *Vose*, 19 Wend. 365; *Kilbourn* v. *Adams*, 7 Met. 39; *Bowman* v. *Wickliffe*, 15 B. Mon. 100; *Blake* v. *Everett*, 1 Allen, 248.)

In this action it was only necessary for the plaintiff to assert in its complaint a right to this road, and then allege such facts as to disturbance as would justify equitable interposition. It was not necessary to state how the right was acquired, whether by ownership of the land or an easement, or to state the evidence to support the right. We were not required to anticipate an alleged assertion of ownership in the land by defendants, by pleading either the Statute of Limitations or a prescription. Under our system, any matter proper to a replication is to be proven without any special pleadings. (*Gottschall* v. *Melsing*, 2 Nev. 185; *Collins* v. *Burnett*, 17 Wend. 566; 4 Barb. 60; 4 Foster, 451—above cited.)

The period for acquisition of a right of way or other easement, is fixed by analogy to the Statute of Limitations, and in this State would be five years. (8 Barb. 153; 1 Vt. 53; 23 Barb. 473; 16 Wend. 530—above cited; *Crandall* v. *Woods*, 8 Cal. 144.)

From open interrupted use, adverse claims of right, knowledge and acquiescence of owner are presumed. (37 Penn. 41; 2

Wharton, 427; 5 Casry, 22; 19 Wend. 363; 18 Conn. 331—above cited.)

Grading the road is itself proof of exclusive claims of right. (7 Metcalf, 39—above cited.)

Although the time within which an easement is acquired is fixed in analogy to the Statute of Limitations, it is still entirely independent of the authority of the Statute. It has never been decided or even contended that the exceptions of the Statute have any application to a prescription.

The reason is apparent. Prescription is said to rest upon the foundation of a supposed grant. If established, its effect is the same as proof of a deed from the owner.

The Statute simply bars a remedy: prescription gives an absolute title. To prevent the acquisition of a title by prescription requires no resort to a Court.

A simple interruption by rebutting any presumption of acquiescence, destroys the title. In this case the building of a fence across the road within five years, could have defeated all claim by prescription. It would be absurd therefore, to suppose that the absence of the defendant should have any influence upon the acquisition of the easement.

*Mesick & Seely*, for Respondents.

The plaintiff's own complaint does not assert any ownership in the land over which the road passes. It only claims a road or right of way. As the plaintiff does not assert any right or ownership in the land, the Statute of Limitations in regard to the time within which suit may be maintained or defended upon title or ownership in land has nothing to do with this case. We shall therefore not notice that portion of plaintiff's brief relating to this subject, more than to say we differ totally from plaintiff's views in regard to that Statute, and if necessary think we could show that this State has really no limitation as to the time within which actions for real estate (other than mining claims) may be brought.

The plaintiff only asserts that it has been the owner, in the actual use and possession of a *road*. That defendants have obstructed the *road* by building a fence across it, etc. This is not claiming

the land. The term *road* imports nothing but the right of way. This point was settled and made perfectly clear in the case of *Wood* v. *Truckee Turnpike Co.*, 24 Cal. 487–8.

The last point made by appellant is, that even if they had no right to the land, they had shown a right to an easement or right of way over the same.

A right of easement by prescription is never sustained by the Courts, except upon the theory of a supposed grant from the owner of the land to the party entitled to the easement. The period of enjoyment of the privilege necessary for maturing the enjoyment into a right, or to raise the presumption of a grant, is generally fixed by the Courts in analogy to the period of statutory limitation for maintaining suits for the possession of land : but as counsel for plaintiff correctly says, the right is independent of the authority of the statute, and grows up to one even in spite of the actual seizin and possession of the land being in another person as real owner. (10 Pick. 138, 205 ; 8 Barb. 153.)

Interruption by suit has never been held necessary for stopping the growth of the use into a right, but other means are quite as effectual for that purpose. The owner of the easement is not in law even considered as having any general property or seizin of the servient estate, unless he also have a fee in the dominant estate ; and then it is useless as a separate estate, provided he own the whole dominant estate, for the greater swallows the less.

It is evident from the nature of the two estates, that the Statute of Limitations might never have run even for a day against the proprietor of the soil, yet the servitude have ripened into a perfect right.

Do the facts proven in this case, under the law, support the theory of a presumption of grant ? We affirm that they are wholly insufficient for that purpose.

A prescriptive right, or presumption of grant, arises only when the enjoyment of the easement was " adverse in the legal sense of the term ; that is, the right must have been asserted under a claim of title, with the knowledge and acquiescence of the owner of the land and uninterrupted. The burden of proving this is on the party claiming the easement. If he leaves it doubtful whether the enjoy-

ment was adverse, known to the owner and uninterupted, it is not conclusive in his favor." (*American Co. v. Bradford*, 27 Cal. 367–8–9.)

But the proofs are wholly silent in respect to all these conditions, except where they inform us that Mr. DeLong, about eighteen months before the commencement of this suit, whilst he was the owner of the land, and then for the first time knowing or supposing that the plaintiff asserted any right over the premises, went upon the ground with Mr. Beckwourth, the plaintiff's Superintendent, denied to him the plaintiff's right, asserted his own exclusive ownership, and was thenceforward negotiated with by the plaintiff in respect to a purchase by it from him, for a year or more, of this very road or right·of way.

Beckwourth also testified that he first learned of DeLong's claim about a year before this suit was begun.

These facts, we insist, negative all inference of the acquiescence of the owners, or of the enjoyment being uninterrupted. (Angell on Limitations, 3d Ed., Sec. 415; *Howard v. O'Neale*, 2 Allen 210.)

In this last case it will be observed that the doctrine is admitted, but it was held that there was no error, because there appeared no evidence of any " word " of opposition to the enjoyment for twenty years to which the instruction could apply, and the instruction was full besides.

Then because those under whom the defendants claim did acquire a right to the land; and the plaintiff's claim is only an easement by right of prescription; and the enjoyment is not shown to have been acquiesced in by the owners of the land, or uninterrupted for any period of limitation, we claim that the judgment must be affirmed.

Opinion by BEATTY, C. J., LEWIS, J., concurring specially.

In the year 1860 certain parties took steps to appropriate and take up for private use a portion of public land in or near Virginia City.

Subsequently, in April and May of 1861, the Potosi Company, a mining association, laid out· and built a road through the same

land.   Since then the Potosi Company has been consolidated with the Chollar Company, and the two are now incorporated as the Chollar-Potosi Company.

The Potosi Company and the Chollar-Potosi Company have continued since May, 1861, to use and enjoy that road, and have suffered all persons having business or pleasure leading them to the Potosi works to use the same freely, as if it were a public road.   In May, 1867, the defendants built a fence across the Potosi road, thereby obstructing travel on the same.   The plaintiff, which has succeeded to the Potosi Company's rights, then filed its bill to enjoin the defendants from obstructing this road.

The defendants, in answer to this bill filed, set up the fact of the location in 1860, and claim that as the successors in interest of those who located this tract of land they have exclusive right of possession, and consequently the right to obstruct the road.

Whether the defendants are entitled to the possession of the land they or their predecessors attempted to appropriate in 1860, it is unnecessary to inquire under our view of the case.   The plaintiff claims an absolute right to the road, asserts continuous and uninterrupted possession of the same for more than five years previous to the obstruction of the road by defendants, and relies on the statute of limitations as securing its rights.   The plaintiff also claims a right of way by prescription.

The defendants (respondents in this Court) claim that the appellant is not entitled to protection under the Statute of Limitations, for two reasons :

First, because the appellant (plaintiff in the Court below) is a foreign corporation, and is therefore not protected by the statute. Second, because the road is not land, but a mere incorporeal hereditament, and therefore is not included within the terms of our statute in regard to entries on land.   Lastly, it is contended by respondents that the appellant cannot claim any rights by prescription, because none such have been pleaded.

We will examine these three propositions seriatim.   And first as to the point, how is this question of limitations affected by the fact of plaintiff's being a foreign corporation, or a corporation created in a neighboring State ?

The fifth section of our Statute of Limitations reads as follows :

" No cause of action or defense to an action founded upon the title to real property, or to rents or to services out of the same, shall be effectual, unless it appear that the person prosecuting the action or making the defense, or under whose title the action is prosecuted or the defense is made, or the ancestor, predecessor or grantor of such person was seized or possessed of the premises in question within five years before the commencement of the act in respect to which such action is prosecuted, or defense is made."

Then follow several sections in regard to the effect of forcible entry, defining what shall be adverse possession, etc.

Sections 14 and 15 read as follows :

" SEC. 14. If a person entitled to commence any action for the recovery of real property, or to make an entry or defense founded on the title to real property, or to rents or services, out of the same be, at the time such title shall first descend or accrue, either : First, within the age of twenty-one years ; or second, insane ; or third, imprisoned on a criminal charge, or in execution upon conviction of a criminal offense for a term less than life ; or fourth, a married woman."

" SEC. 15. The time during which such disability shall continue shall not be deemed any portion of the time in this Act limited for the commencement of such action, or the making of such entry or defense, but such action may be commenced, or entry or defense made within the period of five years after such disability ; but such action shall not be commenced, or entry or defense made after that period."

Section 16, *et sequitur* to Sec. 21, prescribes limitations for personal actions.

Sections 21 and 22 read as follows :

" SECTION 21. If, when the cause of action shall accrue against a person, he is out of the Territory, the action may be commenced within the term herein limited after his return to the Territory; and if, after the cause of action shall have accrued, he depart the territory, the time of his absence shall not be part of the time limited for the commencement of the action."

" SECTION 22. If a person entitled to bring an action other than

for the recovery of real property, except for a penalty or forfeiture, or against a Sheriff or other officer for an escape, be at the time the cause of action accrued, either: First, within the age of twenty-one years; or second, insane; or third, imprisoned on a criminal charge, or in execution under the sentence of a criminal Court, for a term less than his natural life; or fourth, a married woman; the time of such disability shall not be a part of the time limited for the commencement of the action."

Respondent contends that a foreign corporation being in contemplation of law always absent from the State, the twenty-first section prevents the statute from ever running in its favor. Several cases are referred to on this point, some of which do clearly hold that in personal actions under a statute similar to ours, it never runs in favor of a foreign corporation. There is also one case cited from the Tenth Indiana Reports, where the action was for the recovery of land, where the Court had held that the absence of the defendant would excuse the bringing of an action within the time limited by statute. This latter case we will notice presently. With regard to the question which seems to be mooted, whether in a personal action the fact that the defendants being a foreign corporation is to have the same effect in suspending the running of the statute as the absence from the State of a natural person, we do not think need be determined in this case.

The twenty-first section, we are satisfied, in no manner qualifies the provisions of the fifth section. It simply provides that where a cause of action accrues against a person out of the Territory, (now State) or such person departs from the Territory, the statute shall not run during the absence of the defendant.

But Sec. 5 imposes a general inability to sue or defend upon any right claimed in real estate, unless the party suing or defending shall have been in possession of the real estate within five years last past. The limitation being here in respect to the possession of the land, we do not see how the provisions of Section 21 could qualify this Section 5, unless the land should have absented itself from the State. This, we believe, is not claimed.

But it is said by respondent that whatever may be the language of Section 5, the spirit and intent is to impose a limitation of five

years to the bringing of real actions, and this Section 21 must, if liberally and beneficially interpreted, excuse a party from bringing his action as well for realty as for personal property or damages where the person in adverse interest is absent from the State when a cause of action arises.

An examination of the whole Act will, we think, clearly show that such was not the intention of the Legislature. And we think the distinction in the two classes of cases was eminently wise and proper. Section 5 prescribes the limitation to real actions in general terms. Sections 14 and 15 make the exceptions to the operation of the general rule, and we think it was evident that these are intended to constitute the only exceptions to the general rule. If it had been intended to make other exceptions to the running of the statute in real actions, they would most likely have been either incorporated in Sections 14 and 15, or added in a separate section in immediate connection with them. But after Section 15 comes the limitation in personal actions in Section 16 ; and then in Sections 21 and 22 come the exceptions to the limitations imposed in Section 16. Neither the language nor the context seem to connect Sections 21 or 22 with Section 5. Indeed Section 22 is expressly limited to actions other than for real property, and Section 21 is not by its terms applicable to the limitations imposed in Section 5. Here was a party who had been five years in the uninterrupted possession of a piece of land, using it as a road. This showed a *prima facie* right to continue to use such land as a road. Respondents enter upon and build a fence across it. They are sued, and in answer to the *prima facie* case made out by plaintiff say : " We had a right to enter, because we took up and appropriated this land through which the road runs some seven years since." But they fail to show that they had been in possession of this land within five years. This defense then wants one element of being a good one, for the law says : " No * * defense to an action founded upon the title to real property * * * shall be effectual unless it appear that the person * * * making the defense * * * was seized or possessed of the premises in question within five years before the commencement of the Act in respect to which such * * * defense [is] made."

Respondent, however, insists that this view of the case is in direct

The Chollar-Potosi Mining Co. *v.* Kennedy & Keating.

conflict with the decision of the Supreme Court of the State of Indiana, in the case of *Lagow and others* v. *Neilson.* Without ex pressing any opinion as to the correctness of the decision of the Indiana Court, we think it can be safely affirmed that it can afford but little aid in interpreting our statute. In that case the defendant Neilson, for his third plea, says : " That the cause of action did not accrue to the plaintiff within twenty years next before this action was brought." The Court, in speaking of the third plea, or " third paragraph of the answer," as they call it, use this language :

" The reply to the third paragraph of the answer is as follows : ' Plaintiffs say that for twenty years next before the commencement of this action, Neilson, the defendant, was a nonresident of this State.' To this reply the Court sustained a demurrer. And the question to settle is, does the reply avoid the defense of the Statute of Limitations ?

" ' Section 216 of that statute declares that the time during which the defendant is a nonresident of the State, or absent on public business, shall not be computed in any of the periods of limitation. But when the cause has been fully barred by the laws of the place where the defendant has resided, such bar shall be the same defense here as though it had arisen within this State.' (2 R. S., p. 77.)

" It is insisted that this section was intended to apply to personal actions, and not to those instituted for the recovery of real property. We are not inclined to adopt that construction. As contended, the concluding branch of the section should not be so construed as to allow the law of limitation of a sister State to be used here in regard to actions for the realty ; and it may be that, for the recovery of real estate, a party is never prevented from bringing his suit by the nonresidency of any claimant or owner ; still these conclusions, not being inconsistent with the very explicit language used in the first branch of the enactment, cannot be allowed to control it. The phrase ' shall not be computed in any of the periods of limitation,' evidently refers to all the periods of limitation definitely fixed by the statute ; hence there seems to be no room left for construction. The demurrer was not well taken."

The difference between the language of Section 216 of the Indi-

ana statute and Section 21 of our Act is striking. "Any of the periods of limitation" is a much more comprehensive phrase than "when the cause of action shall accrue against a person." The first would readily include a period of time after the lapse of which an entry on land would be illegal. The latter does not by its terms refer to any such period. Besides, the terms of the Indiana statute (which is not accessible to us) in regard to the limitation of real actions may be entirely different from ours. The Indiana Court seems to have arrived at the conclusion it adopted only because of the explicit language of their statute. Ours is so very different that the case referred to afforded us but little aid in constructing it. We are satisfied that the nonresidence of a party claiming real estate does not affect or qualify the provisions of Section 5 of our Act. If land is vacant, the owner can take peaceable possession without suit. If occupied, he can bring suit against the occupant, and it is not necessary to inquire what the status of the occupier is. If the land is occupied by a mere servant, as between him and his employer, the possession is in the master and not the servant. But if a third party owns the land, both are trespassers as against him, and a suit against the servant is just as effectual as against the master.

It is, however, contended by respondents that the record does not show that the appellant had or claimed to have any land, but merely a right of way over land. The language of the complaint is as follows : " That it is now, and for more than five years last past, it and its predecessors in interest have been the owners of and in the possession and actual use and enjoyment of a certain road, situate in said county, in the city of Virginia, leading from what is known as the Potosi dump, near the mouth of the Potosi tunnel southward, near the line of E street in said city, into Gold Hill, and thence westward into C street; said road being about thirty feet wide and about half a mile in length, and known as the Potosi Road."

The proof shows clearly that the Potosi Company surveyed and graded this road for travel in 1861, and since then have been continuously using it as a road.

Respondents contend that this averment and proof does not show

an occupation or possessory right to the land over which the road is built, but merely a claim to a right of way.   In support of this view they cite the opinion written by Mr. Justice Shafter, and apparently concurred in by the entire bench of the Supreme Court of California, in the case of *Wood et al.* v. *Truckee Turnpike Co.*, 24 Cal. 487.   We quote from that opinion the following language: "The plaintiffs acquired nothing by the purchase of the road to which the action of ejectment has any remedial relations.   'Road' is a legal term strictly synonymous with the term ' way,' and in the complaint, and throughout all the title papers of the plaintiffs, their identity is fully recognized.   A way is an easement, and consists in the right of passing over another man's ground.   (Wash. on Eas. 161.)   It is an incorporeal hereditament, a servitude imposed upon corporeal property, and not a part of it.   It gives no right to possess the land upon which it is imposed, but a right merely to the party in whom the way is vested to enjoy the way.   Neither is it considered that the owner of the way is entitled, by reason of such ownership, to a participation in the rents and profits arising from the land upon which the easement is imposed.   (Wash. on Eas. 8.) A deed of way, or of a right of way, would pass to the grantee no title to or interest in the land."

The main point here is that the word " road " is exactly synonymous with " way."   This proposition we conceive to be utterly untenable.   It is true that the term " way " is sometimes used in the same sense as road. ·  Sometimes we call a road a street, a lane, etc., a *way*—though this is, perhaps, an improper use of the term " way."

But Mr. Washburn, when defining " way " as an easement, uses the word in a strictly legal sense.   " Way," in its legal, technical sense, means nearly the same thing as " right of way."   Or in other words, the right of one person, of several persons, or of the community at large, to pass over the land of another.

Webster, among other definitions of a road, says it is the " ground appropriated for travel, forming a communication," etc.

Bouvier defines a road as " a passage through the country for the use of the people."   He also says: " The public have the use of roads.   But the owners of the land through which they are

made, or which bound upon the roads, have *prima facie* a fee in such highway." Or in plain English, the public does not usually own the soil over which roads are constructed, but only a perpetual right to use that soil for some particular purpose.

We cannot find that the word "road" is anywhere used or defined, save in the opinion just quoted, as being synonymous with right of way. In fact, we feel certain it is never so used in common conversation, in ordinary writing, nor in legal works. Road means any piece of land used or appropriated for travel. It may be so appropriated by an individual, a corporation or the public. Where roads are constructed by turnpike and railroad companies, sometimes they acquire a complete title to the land over which their road is built, and sometimes only the right of way. So the public may, if it chooses, buy the land over which a public way is to be established if the individual owner is willing to sell it, or may, which is more usual, only purchase or procure by the proper proceedings the right of way for such road. The road however is one thing, the right of way is another, and very different.

If an individual wishes to make a road for his own use, and can buy the land over which he wishes to pass for precisely the same money that it would cost to acquire the right of way, undoubtedly he would buy rather than acquire a mere easement. The public lands are open here to be appropriated by any one who desires to do so. The first appropriator has always been considered and held by the Courts of this State as the owner of the land as against all the world except the Government of the United States. We see no reason why one who appropriates a portion of the public domain for the purposes of a road, is not as well entitled to the protection of the Courts as one who appropriates a fraction of the same domain for a mill-site or cornfield.

If the public were to lay out a road eighty feet in width through the farm of A, and he were to make a conveyance to B, describing the property sold as a road eighty feet in width and one mile in length, passing through the farm of the grantor, we think it would be just as good a conveyance as if he were to describe the property sold as a piece of land eighty feet wide and one mile in length, extending from one side of grantor's farm to the other, and being

the same land over which a public road is laid out. The meaning in either case would be equally obvious, and in either case the purchaser would get the fee of the land subject to the public easement.

The language of the complaint and the proof shows the plaintiff's right to the land (not a mere easement) over which the road runs. Having been for five years in the uninterrupted possession of the same, plaintiff is protected by the Statute of Limitations, and the acts of the defendant in stopping up the road were tortious, and such as to entitle the plaintiff to the relief sought.

But even admitting that plaintiff did not appropriate the soil, but only claimed the right of way when locating the road, we do not see how that could aid the defendants. An uninterrupted adverse enjoyment of the right of way for more than five years would by prescription establish the plaintiff's right to continue in the enjoyment of the same privileges. Here the plaintiff and those through whom it derives title, were in the enjoyment of this road for more than five years without disturbance. It is true that before the expiration of five years, there was a claim asserted adverse to their continued enjoyment of this right. The plaintiff or its agent was informed by Mr. DeLong that other parties owned or claimed the land over which their road ran; a proposal was made to sell to plaintiff their right to continue the road, or something of this kind. But a mere proposition of this kind does not amount to a disturbance.

The enjoyment must therefore be considered as continuous and uninterrupted during a period exceeding five years.

The point that the possession or enjoyment is not shown to have been adverse, we think is not well taken. Whenever a party assumes and exercises a right of way, openly, notoriously and continuously, without asking the consent of the owner of the land, and without in any way manifesting by word or deed that he is exercising the right as a favor or license given him by the owner of the soil, it must be considered as exercised adversely to the owner of the land. This appears clearly to have been a case of that sort. At least, such facts are shown as make a *prima facie* case of adverse holding, and nothing is attempted to be shown to the contrary by the defendants. They do not attempt to show that this privilege was exercised in subordination to their rights.

The respondents further contend that if the plaintiff had any rights established by prescription, it has not properly pleaded such prescription, and therefore it cannot avail itself of such right in this Court.

Chitty, in his work on pleadings, Vol. 1, p. 380, speaking about the particularity with which a plaintiff's case should be stated in his declaration, says: " But it is now fully settled that in a personal action against a wrong-doer for the recovery of damages, and not the land itself, it is sufficient at common law to state in the declaration that the plaintiff, at the time the injury was committed, was possessed of a house or land, etc.; and that by reason of such possession he was entitled to the common of pasture, way, or other right, in the exercise of which he has been disturbed;" and further says, on page 381: " So, if the declaration be for diverting a water course from the plaintiff's mill, his possession of the mill should be concisely stated, and that by reason thereof he ought to have had the use and benefit of the water course, without stating that it was an ancient mill or disclosing the particular grounds upon which the right to the water is claimed. And in an action for a disturbance of a right of common, or way, or of a seat or pew in a church, the declaration states the possession of a house or land, etc.; and that by reason thereof the plaintiff was entitled to the right, in the exercise of which he had been disturbed."

We think the complaint here is as specific, and shows the ground of appellant's claim with as much particularity, as Mr. Chitty seems to think is necessary in a common law declaration. Our system of pleading is extremely liberal, and we are not disposed to hold that parties shall lose their rights merely because they do not plead them with the greatest precision and nicety. The complaint shows the defendant clearly the nature of the plaintiff's claim, and under our system that is sufficient.

The judgment of the Court below is reversed, and that Court will take further proceedings in the case according to the views herein expressed.

Lewis J.—Upon the prescriptive right of way I concur with the reasoning and conclusion of the Chief Justice.

Johnson, J., having been counsel for one of these parties, does not participate in this decision.